UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATIONAL MEDICAL FINANCE &
ASSISTANCE, LLC, an Arizona limited
liability company,

    Plaintiff,

vs.                                            CASE NO.:

SURGICAL CAPITAL SOLUTIONS, INC.,
a Florida corporation

    Defendant.
_____/

**COMPLAINT**

    Plaintiff, National Medical Finance & Assistance, LLC (hereinafter, "NMFA"), by and through its undersigned counsel, sues the Defendant, Surgical Capital Solutions, Inc. (hereinafter, "SCS") and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

    1.    Plaintiff, NMFA, is an Arizona limited liability company. NMFA's sole member is National Health Finance DM, LLC. National Health Finance DM LLC's sole member is National Health Finance Holdco, LLC. National Health Finance Holdco, LLC's sole member is Law Finance, Ltd., a publicly traded Australian company. Thus, for purposes of diversity jurisdiction, NMFA is a citizen of Australia.

    2.    NMFA is a national medical finance company that specializes in providing immediate working capital to companies in the medical industry in exchange for the company assigning NMFA certain of its account receivables by way of a medical lien.

1

3. Defendant, SCS, is a Florida corporation and citizen of Florida transacting business in Pinellas County, Florida, with its principal place of business located at 5401 W. Kennedy Blvd., Suite 100, Tampa, FL 33609.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. The Court has personal jurisdiction over Defendant pursuant to Fla. Stat. § 48.193(1)(a) and the exercise of personal jurisdiction over Defendants in Florida does not violate the Due Process Clause of the United States Constitution.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, and because Defendant's principal place of business is in this district.

## GENERAL ALLEGATIONS

7. In November 2014, NMFA and SCS's relationship began with the parties entering into a Medical Account Purchase and Lien Servicing Contract wherein NMFA purchased from SCS certain medical liens owed by SCS (each an "Account" and collectively, the "**Accounts**") in exchange for payment from NMFA ("Purchase Agreement"). A true and correct copy of the Purchase Agreement is attached hereto as **Exhibit "A"**.

8. While SCS granted all rights and privileges in the Accounts to NMFA under the Purchase Agreement, SCS remained obligated to monitor each Account and collect on the Accounts for the benefit of NMFA. The Purchase Agreement further established a detailed, tiered approach under which SCS was required to make payments to NMFA at an agreed upon 1.88x rate of return for the Accounts purchased by NMFA.

9. In the event NMFA did not receive payments on an Account equal to the required rate of return within fourteen (14) months from the date NMFA purchased an Account, SCS was required to rectify the deficiency in accordance with the default provisions as outlined by the Purchase Agreement. *See,* Ex. A ¶12.

10. On July 25, 2016, NMFA and SCS entered into an Amendment/Addendum to Existing Contract ("Addendum") which modified certain payment terms in the Purchase Agreement. A true and correct copy of the Addendum is attached hereto as **Exhibit "B"**.

11. Specifically, the Addendum established certain minimum payments that SCS must make to NMFA for each purchased Account. Most importantly, the Addendum had the effect of applying payments and determining defaults on each Account individually, as opposed to analyzing the NMFA Accounts as a collective group as contemplated by the Purchase Agreement.

12. Pursuant to the Addendum, for each Account purchased by NMFA, SCS guarantees NMFA a 1.65x rate of return.

13. Thus, 1.65x is the minimum floor that NMFA must receive for each Account when a payment is recovered. Upon receipt of payment on an Account, SCS is required to remit payment to NMFA within five (5) days.

14. SCS' failure to timely remit payment to NMFA constitutes an event of default at which time default interest at a rate of 20% per annum shall accrue on all sums due and owing. *See,* Ex. A ¶8.

15. In the event NMFA does not receive a 1.65x rate of return for an Account, SCS is required to either (i) make a lump sum cash payment to NMFA equal to the difference between the amount received on the Account and the required 1.65x rate of return or (ii) provide additional

accounts to NMFA under the same terms and conditions contained in the Purchase Agreement, as amended. *See,* Ex. A ¶12(a),(b); Ex. B, ¶ 5(b).

16. The Addendum further provides an incentive to SCS for settling or resolving Accounts in a timely manner.

17. If SCS settles or resolves an Account within nine (9) months from the date NMFA purchased the Account, any profits received on such Account greater than the 1.65x rate of return guaranteed to NMFA will be split with 70% of the profits going to SCS and 30% to NMFA.

18. The division and split of the profits adjusts by 10% every three (3) months (the "Profit Split") after the initial nine month collection period. Thus, if an Account is not settled within the twenty-four (24) months after NMFA purchased a given Account, 100% of the profits received on the Account greater than the 1.65x rate of return must be remitted to NMFA. *See,* Ex. B, ¶ 5(b).

19. For mesh Accounts, the Addendum provides that NMFA is to receive a guaranteed 75% rate of return on its initial purchase price for the Account. Any additional recovery greater than the 75% rate of return is to be divided and split between NMFA and SCS. *See,* Ex. B, ¶ 5(h).

20. The Addendum further provides that in the event SCS does not receive any payment on an Account and such Account is deemed a zero recovery account, SCS is responsible for paying NMFA the principal amount NMFA paid to purchase the Account plus interest at a rate of 20% per annum from the date NMFA purchase the Account (the "Zero Recovery Accounts"). *See,* Ex. B, ¶ 5(c).

21. Accordingly, once a payment is made to SCS on an Account purchased by NMFA or an Account has been deemed a Zero Recovery Account, the Addendum requires SCS to

immediately make an appropriate payment to NMFA.  The failure of NMFA to make such a payment is a default under the terms of the Purchase Agreement as amended by the Addendum.

22. Unless otherwise modified by the terms of the Addendum, all terms in the Purchase Agreement remain unchanged.

23. Defendant breached its obligations to NMFA under the Purchase Agreement, as amended, by failing to timely remit the required payments to NMFA on Accounts (i) where the payment received by SCS was below the 1.65x guaranteed rate of return, and (ii) on Accounts that have been deemed Zero Recovery Accounts.

24. Defendant is also in default of is obligations to NMFA under the Purchase Agreement, as amended, by failing to provide NMFA with the required profit split on accounts where SCS recovered sums about the guaranteed floor of 1.65x.

25. Notwithstanding the defaults and increasing balance owed, SCS has continued to collect on the Accounts but failed to remit and forward all of these funds to its rightful owner, NMFA.

26. NMFA has had numerous communications with SCS in an effort to resolve this dispute but SCS's ongoing failure to make a payment as required by the Purchase Agreement, as amended, and SCS's failure to forward monies collected on behalf of NMFA affirms their breach of contract.

27. On December 10, 2021, NMFA served SCS with a formal Notice of Default and Demand for Payment (the "Demand Notice") informing Defendant of their default and providing it with an opportunity to cure the same. A true and correct copy of the Demand Notice is attached hereto as **Exhibit "C"** and is incorporated herein by reference.

28. Following transmittal of the Demand Notice and despite several communications with SCS, SCS did not cure the defaults and continues to fail to make any payments under the Purchase Agreement, as amended.

29. As of February 23, 2022, the outstanding principal balance due and owing to NMFA for the Accounts is in excess of $7,000,000.00. The amounts due and owing continue increase and accrue interest in accordance with the Purchase Agreement.

30. NMFA has retained the undersigned law firm to represent it in this case and is obligated to pay it a reasonable fee for its services. Pursuant to the terms of the Purchase Agreement, as amended, NMFA is entitled to recover in this action from SCS all attorneys' fees and costs incurred by NMFA as a result of the default.

31. All conditions precedent to bringing of this action have occurred, been performed or been waived.

32. The Purchase Agreement and Addendum are governed by, and shall be construed, interpreted, and enforced in accordance with the laws of the State of Arizona.

## COUNT I
### BREACH OF CONTRACT

33. This is an action against SCS to recover damages for breach of contract in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

34. NMFA incorporates by reference paragraphs 1 through 32 above as if fully set forth herein.

35. In 2014, NMFA and Defendant entered into a Purchase Agreement wherein NMFA provided immediate working capital to SCS in exchange for SCS assigning certain of its Accounts to NMFA.

36. On July 25, 2016, NMFA and SCS executed an Addendum that modified certain payment terms in the Purchase Agreement.

37. NMFA has performed all of its obligations in accordance with the terms and conditions of the Purchase Agreement, as amended.

38. SCS materially breached and defaulted under the Purchase Agreement, as amended, by failing to timely remit required payments to NMFA on Accounts where the payments received were below the guaranteed rate of return and by failing to remits profits owed to NMFA pursuant to the Profit Split.

39. SCS has further breached and defaulted under the Purchase Agreement, as amended, by failing to make payments to NMFA on each Zero Recovery Account and by continuing to collect on the Accounts and not remitting the required payments to NMFA.

40. NMFA has suffered damages as a direct result of SCS' conduct. As of February 23, 2022, the outstanding principal balance due and owing to NMFA under the Purchase Agreement, as amended, is in excess of $7,000,000.00 plus all amounts owed to NMFA pursuant to the Profit Split. The amounts due and owing are continuing to accrue interest, plus attorneys' fees and costs, and other recoverable expenses owed under the Purchase Agreement, as amended.

WHEREFORE, National Medical Finance & Assistance, LLC demands judgment in its favor and against Surgical Capital Solutions, Inc. for damages, including interest, late fees, attorneys' fees and costs, and other recoverable expenses, together with such other and further relief as this Court deems just and proper.

**DATED** this 23rd day of February, 2022.

/s/ *Patrick M. Mosley*
Patrick M. Mosley, Esq.
Florida Bar No. 0033735
Jessica A. Clemente, Esq.

                                                      Florida Bar No. 1003462
HILL WARD HENDERSON
101 East Kennedy Boulevard, Suite 3700
Tampa, Florida  33602
Telephone:     (813) 221-3900
Facsimile:      (813) 221-2900
E-Mail:  patrick.mosley@hwhlaw.com
E-Mail:  jessica.clemente@hwhlaw.com
E-Mail:  tricia.elam@hwhlaw.com
*Attorneys for Plaintiff*